## UNITED STATES v. AMERICAN WOOLEN CO. et al.

(District Court, S. D. New York. June 10, 1920.)

**1. War ⬡⟳4—"Necessaries" for which charge is limited included only those specified.**

In section 4 of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), making it unlawful to make an unjust charge in dealing in necessaries, "necessaries" includes only articles specified in section 1 of the act (section 3115⅛e), which originally referred to food, fuel, etc., thereafter called "necessaries" in the act, and which was amended by Act Oct. 22, 1919, to include wearing apparel.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessaries.]

**2. War ⬡⟳4—Ejusdem generis rule does not add to necessaries specified by Lever Act.**

The rule of ejusdem generis cannot make "necessaries," as used in sections 1 and 4 of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e, 3115⅛ff), include articles of the same nature as those specified, since those sections contain no general words in addition to the specific ones.

**3. War ⬡⟳4—Woolen cloth is not "wearing apparel," within Lever Act; "necessaries."**

Woolen cloth is not "wearing apparel," within Lever Act, § 1 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛e), as amended by Act Oct. 22, 1919, and is therefore not a necessary, within section 4 of the act (section 3115⅛ff), punishing unreasonable charges for necessaries.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Wearing Apparel.]

The American Woolen Company and others were indicted for violation of the Lever Act. On motion to quash the indictment. Motion sustained.

A. Mitchell Palmer, Atty. Gen., and Frederick W. Bisgood and Herbert C. Smyth, Sp. Asst. Attys. Gen., for the United States.

Sherman L. Whipple, of Boston, Mass., for defendant Wood.

Wheaton Kittredge, of Boston, Mass., for defendant American Woolen Co.

Hays, Hershfield & Wolf, of New York City (Charles E. Hughes, of New York City, of counsel), for defendant American Woolen Co. of New York.

MACK, Circuit Judge. The substantial question in this case is whether the piece of cloth is a necessary, within section 4 of the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛ff), or is wearing apparel or a necessary, as defined in section 1 of that act (section 3115⅛e), as amended by the Act of October 22, 1919 (41 Stat. 297).

Section 1 as originally enacted referred only to—

"foods, feeds, fuel, including fuel oil and natural gas, and fertilizer and fertilizer ingredients, tools, utensils, implements, machinery, and equipment required for the actual production of foods, feeds, and fuel, hereafter in this act called 'necessaries.'"

The amendment inserted after feeds:

"Wearing apparel, containers primarily designed or intended for containing foods, feeds, or fertilizers."

The indictment is based upon that provision of section 4 making it unlawful—

"to make any unjust or unreasonable rate or charge, in handling or dealing in or with any necessaries."

[1] I. Section 4 cannot be read independently of section 1. The acts prohibited did not refer to all necessaries, but clearly referred only to those necessaries defined as such in section 1. Wearing apparel is a necessary. If section 4 had forbidden unreasonable rates as to any necessaries, wearing apparel, clearly a necessary in the general sense of the word, would have been embraced therein, even before the amendment of 1919; the amendment would therefore have been unnecessary. Congress did not so consider it, and therefore by the amendment of 1919 expressly included it in the class of necessaries that were to become subject to the prohibitions of the act.

Either the word "necessaries," as used in section 4, is free from any limitation by reason of the definition in section 1, in which case, even before the amendment of 1919, it would have included wearing apparel, or it is to be limited to those articles expressly stated in section 1 as "hereafter in this act called necessaries." It is practically conceded, and, if it were not conceded, it must be held, especially in view of the amendment, that "any necessaries," as used in section 4, does not include all necessaries. What, then, is the limitation? Evidently it is to such articles as are stated in section 1 to be called "necessaries" in the later sections. If section 1 had merely mentioned specific articles, without also stating that they were thereafter called "necessaries," such a limitation in section 4 would be more accurately expressed by the phrase "any such necessaries." But, in view of the statutory definition of necessaries, the phrase "any necessaries," used in section 4 to denote the articles specified in section 1, is not only proper, but more apt than the phrase "any such necessaries."

[2] The government contends, however, that under the ejusdem generis rule necessaries, as used in sections 1 and 4, included, not only those specifically defined as such, but others of the same nature. Reference is made to section 10 (section 3115⅛ii), providing for the requisition of "foods, feeds, fuels and other supplies necessary to the support of the army or the maintenance of the navy or any other proper use connected with the common defense." Regardless of the ejusdem generis rule, the ordinary and reasonable interpretation of "other supplies" is any supplies of any kind necessary for the purposes designated. It would therefore include both wearing apparel and its ingredients. The word "necessaries," subsequently used in section 10, of course, refers to any and all articles which the President is empowered by this very section to requisition for the purposes stated.

But the language of neither section 1 nor section 4 affords any scope for the application of this rule of construction. Only certain specific

articles are mentioned in section 1. Only such articles are stated to be thereafter in the act called "necessaries." If, then, the phrase "any necessaries," in section 4, means any such articles as are so designated in section 1, it follows, in the absence of any more general phrase, such as "other supplies," or "other articles," in section 1, that section 4, too, is limited in its scope to the articles thus specifically designated in section 1.

[3] II. We come then, to the meaning of the term "wearing apparel." Concededly bolts of cloth are not, in and of themselves, wearing apparel. It is contended, however, that, interpreted in the light of reason, "wearing apparel" must be held to include the material used to make up a garment; in other words, that the legislative intent to secure reasonable prices in the distribution of wearing apparel cannot possibly, or perhaps reasonably, be carried out, unless the limitations imposed upon the distribution of the made-up garments are extended to the materials out of which they are made.

While Congress had as much power to regulate the distribution by the producer or manufacturer of the wool, cotton, or silk, the dyestuffs, the cloth, the buttons, the thread, or any other ingredients, as of the finished or partly finished garment, properly designated as "wearing apparel," and while such regulation would doubtless secure a more effectual control of the distribution by the garment manufacturer or the retailer of the finished product, I can find in the act no intent thus to control the distribution of all, or indeed any, of the ingredients that enter into wearing apparel. Apt words to indicate such an intent were readily available. Indeed, in section 1 Congress expressly included "fertilizer ingredients," and did not limit the control to "fertilizers." When, therefore, Congress used an expression having a clear and definite meaning, I am unable to find any ground thus to broaden the ordinary and trade signification of the word, or by implication to bring other articles within the statutory prohibitions.

III. It is unnecessary to consider the other objections to the indictment.

The motion to quash must be sustained.